UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE LIFE IS GOOD COMPANY, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| OOSHIRTS INC., | ) | |
|     Defendant | ) | |

COMPLAINT AND JURY DEMAND

PARTIES

1. Plaintiff The Life is Good Company ("Life is Good") is a Massachusetts corporation with a principal place of business in Boston, Massachusetts.

2. Defendant ooShirts Inc. ("ooShirts") is a California corporation with a principal place of business in Fremont, California.  ooShirts does business as TeeChip, and operates an interactive website at www.teechip.com that hosts campaigns through which designers of t-shirts advertise and sell those shirts.  Consumers throughout the world, including in Massachusetts, can purchase the t-shirts directly through the Defendant's website.

JURISDICTION AND VENUE

3.  This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Plaintiff is a citizen of a different state than the Defendant, and the property right at issue has a value in excess of $75,000.00.  In addition, this Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b) because this matter involves violations of the Lanham Act, 15 U.S.C. § 1051, et seq., as well as substantial and related state law claims.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Life is

Good's cause of action arose and Life is Good is being injured in this judicial district, and because Defendant is doing business in this judicial district and targeting Massachusetts customers to purchase its infringing and counterfeit products.

## FACTS

A. <u>The Plaintiff and its "LIFE IS GOOD" and "Jake" Trademarks.</u>

5. Since at least as early as 1994, and continuously therefrom, the Plaintiff and its predecessors (Albert Jacobs and John Jacobs, doing business as Jacobs Gallery) have sold various products such as t-shirts, hats, pants, other clothing, stickers, flying discs, coffee mugs, *inter alia*, under the trademark "LIFE IS GOOD." The goods have been sold to retail stores and consumers directly by Life is Good, through its licensees, or through its web site.

6. Since 1994, the Plaintiff has continuously and pervasively utilized its "LIFE IS GOOD" trademark within this district and throughout the United States on its products, on hang tags, displays, boxes, packaging and labels, at its website ([www.lifeisgood.com](www.lifeisgood.com)), and in catalogs and other places.

7. In short, the Plaintiff has invested substantial resources in promoting its products under the "LIFE IS GOOD" mark, and in developing national recognition of its "LIFE IS GOOD" mark and brand.  As a result, the "LIFE IS GOOD" mark is perceived as a distinctive indicator of Plaintiff as the source of the goods.

8. On December 24, 1996, the United States Patent and Trademark Office (the "U.S.P.T.O.") issued a registration for Plaintiff's trademark "LIFE IS GOOD," registration number 2,025,737 (the "'737 Registration" ). The registration was issued to Jacobs Gallery.  The goods under this registration are "Sportswear, namely T-shirts, sweatshirts, shirts, hats, pants, and shorts."  The trademark was assigned by Jacobs Gallery to Life is good, Inc. on April 16,

1998. On April 6, 2002, the U.S.P.T.O. accepted Life is Good's section 8 and 15 affidavit for the '737 registration, and thus, it has become incontestable pursuant to 15 U.S.C. § 1065. The trademark was renewed on March 6, 2007, and is currently in full force and effect. On October 15, 2008, the change of the name of the registrant to The Life is Good Company was recorded with the U.S.P.T.O.

9. In addition, Life is Good has eleven (11) other U.S. trademark registrations for the "LIFE IS GOOD" trademark for a variety of goods and services, and has registered the "LIFE IS GOOD" trademark in Canada, Europe and numerous other countries

10. Further, the Plaintiff, through assignment from Jacobs Gallery, is the owner of the "Jake Symbol," which Life is Good utilizes as a trademark on or in connection with many of the products it sells. An example of the "Jake Symbol" is attached hereto as Exhibit A.

11. The "Jake Symbol" was registered on April 22, 1997, U.S. Reg. Number 2,055,452, and was assigned to Plaintiff on April 16, 1998. The U.S.P.T.O. accepted Life is Good's section 8 and 15 affidavit for the "Jake Symbol" registration, and thus, it has become incontestable pursuant to 15 U.S.C. § 1065. The "Jake Symbol" trademark registration was renewed on May 11, 2007, and is currently in full force and effect.

12. The trademark "LIFE IS GOOD" appears on or in connection with every product sold by Life is Good, and the "Jake Symbol" appears on many of Life is Good's products.

13. For many years Life is Good has marketed its products and offered its products for sale at its internet web site located at www.lifeisgood.com. Representative pages from Life is Good's web site are attached hereto as Exhibit B.

B. <u>The Defendant and Its Infringing Activities</u>.

14. ooshirts is in the business of printing and selling t-shirts with a wide variety of

designs. Upon information and belief, Defendant has online tools that permit its customers to create and upload infringing and counterfeiting designs, and start a "campaign" whereby the customers sell infringing t-shirts on Defendant's website. Upon each sale, Defendant manufactures the infringing and counterfeit t-shirt and ships it to the purchasing consumer.

15. Upon each sale, Defendant reimburses itself for "production costs" as well as a seven percent (7%) processing fee, and pays out the remaining revenue to the t-shirt designer.

16. On information and belief, Defendant has no method or process for screening a design to ensure that it does not infringe the intellectual property rights of third-parties before the design is launched as a "campaign" and sales commence on Defendant's site.

17. Rather, the only "protection" that Defendant provides to third-party intellectual property owners is its "Intellectual Property Rights Policy." However, that policy requires intellectual property owners to inform Defendant of infringement *after* the site has begun hosting the campaign and fulfilling sales orders.

18. Although Defendant states that it is its "policy" to remove infringing content from its website, Defendant has confirmed to Life is Good's counsel that it will fulfill orders made for infringing products if those orders were made before Defendant received notice of the infringement.

19. Further, although Defendant states in its "Intellectual Property Rights Policy" that repeat offenders have their access to Defendant's site terminated, Life is Good understands that serial infringers are able to circumvent this policy by adopting fictitious user names that allow them to restart infringing campaigns on Defendant's website.

20. Although Defendant asserts that its "Intellectual Property Rights Policy" meets the requirements of the Digital Millennium Copyright Act ("DMCA"), it does not because

Defendant's policy fails to effectively prevent repeat infringers from continuing to access Defendant's site to sell infringing products. Further, the DMCA "safe harbor" provisions only apply to copyright infringement claims; thus Defendant's policy affords it no "safe harbor" from Life is Good's trademark-based claims.

21. In early February of 2016, Life is Good learned that Defendant was hosting an infringing campaign entitled "J33p Life Is Good". As a result, on February 7, 2016, counsel for Life Is Good sent a letter to Defendant pursuant to its "Intellectual Property Rights Policy," requesting that the infringing campaign be removed from Defendant's website. A copy of that letter is attached hereto as Exhibit C.

22. Although Defendant temporarily removed that campaign from its website, the campaign reappeared in May of 2016 and again in June of 2016, requiring Life is Good's counsel to send another letter on June 13, 2016 demanding that Defendant remove the infringing campaign. A copy of that June 13, 2016 letter is attached hereto as Exhibit D.

23. In addition, Life Is Good became aware of numerous other infringing campaigns hosted on Defendant's website, necessitating additional letters from Life Is Good's counsel to Defendant on June 9, 2016, June 20, 2016, and June 22, 2016. Copies of those letters are attached hereto as Exhibit E.

24. Although Defendant eventually removed a number of the infringing campaigns, a number remain. Attached hereto as Exhibit F are printouts from Defendant's website for t-shirts offered for sale on Defendant's website as of the filing of this lawsuit.

25. A number of the t-shirts that have been offered for sale or currently are for sale on Defendant's website not only infringe Life is Good's trademarks, but are identical, counterfeit copies of Life is Good's graphics.

26. Because of the rampant infringement promoted on Defendant's site, Life is Good has repeatedly requested that Defendant take affirmative steps to ensure that campaigns that infringe Life is Good's trademark rights are denied access to Defendant's website.  <u>See</u> Exhibit D hereto.  <u>See also</u> email chain between Life Is Good's counsel and Defendant attached hereto as Exhibit G.  Defendant has refused to take such affirmative steps.

27. Defendant's conduct is causing significant consumer confusion.  A number of consumers have reached out to Life is Good to inquire as to whether the infringing shirts sold on Defendant's website are authentic Life is Good shirts.  Further, at least one consumer purchased a shirt from Defendant's website believing that it was an authentic Life is Good shirt, only to have Defendant refuse to accept a return of the shirt when the consumer learned the truth.  Copies of emails reflecting consumer confusion are attached hereto as Exhibit H.

28. Defendant's actions already have caused and are likely to cause confusion, mistake, or deception among the consuming public as to the source or origin of the t-shirts sold on Defendant's website, and are likely to create a false belief that sales on Defendant's website are authorized by or sponsored by Life is Good.   As a result, the Defendant's actions are causing, and unless enjoined will continue to cause, damage to the substantial goodwill that Life is Good has developed in its marks and brand.

29.  If the Defendant is not enjoined from misappropriating Life is Good's marks, the Plaintiff will suffer immediate and irreparable harm.

COUNT I
TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
<u>15 U.S.C. § 1114</u>

30. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 of the complaint.

31. Plaintiff's marks "LIFE IS GOOD" and the "Jake Symbol" are protected by valid, subsisting, and incontestable United States Trademark Registrations.

32. The commercial use of Life is Good's trademarks on t-shirts by Defendant as described above is a willful infringement of Life is Good's registered trademarks, and such commercial use was with knowledge of and intended to trade off of Life is Good's prior rights to its registered trademarks.

33. Defendant's solicitation, manufacture, offering for sale, sale and shipment of infringing t-shirts creates a likelihood of confusion in the minds of consumers as to Life is Good's affiliation, connection or association with, or sponsorship or endorsement of the infringing products.

34. Plaintiff has not authorized the Defendant to make the above-described uses of Plaintiff's trademarks.

35. Upon information and belief, the Defendant acted knowingly and intentionally in misappropriating the Plaintiff's trademarks, and has continued to do so despite actual knowledge of Plaintiff's rights and Defendant's infringement.

36. The goodwill of Life is Good's trademarks is of enormous value, and Life is Good is suffering and will continue to suffer irreparable harm should Defendant's unauthorized manufacturing, selling and shipping of the infringing products continue.

37. Defendant's use of Life is Good's trademarks on the infringing products has continued and will continue unless enjoined by this Court.

38. Life is Good is entitled to preliminary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act, including, without limitation, compensatory damages, enhanced damages, disgorgement of profits and costs and attorney's

fees.

## COUNT II
## UNFAIR COMPETITION AND PASSING OFF UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)

39. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 38 of the complaint.

40. Defendant's manufacture, sale and shipment of products bearing the Life is Good trademarks that compete directly with authentic Life is Good products has caused and will likely cause confusion, mistake or deception on the part of persons interested in purchasing authentic Life is Good products as to the origin of Defendant's infringing products, and/or the sponsorship or approval by Life is Good of Defendant's infringing products.

41. Upon information and belief, Defendant's unfair competition and passing off has been willful and deliberate, and has continued despite actual knowledge of Plaintiff's rights and Defendant's infringement.

42. The goodwill of Life is Good's trademarks is of enormous value, and Life is Good is suffering and will continue to suffer irreparable harm should Defendant's unfair competition and passing off of the infringing products continue.

43. Defendant's unfair competition and passing off has continued and will continue unless enjoined by this Court.

44. Life is Good is entitled to preliminary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act, including, without limitation, compensatory damages, enhanced damages, disgorgement of profits and costs and attorney's fees.

## COUNT III
## CONTRIBUTORY TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, 15 U.S.C. §§ 1114 and 1125(a)

45. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 44 of the complaint.

46. Defendant manufactures, sells and ships infringing and counterfeit products created by unnamed third parties.

47. In view of the numerous notices provided to it by Life is Good, Defendant is aware that those persons it encourages to use TeeChip's online design tools are creating infringing and counterfeit designs which Defendant is manufacturing, selling and shipping.

48. Defendant is liable for contributory trademark infringement through its actions of providing online tools for unknown third persons to create infringing and counterfeiting designs, and for Defendant's acts of manufacturing, selling, and shipping t-shirts bearing such infringing and counterfeit designs.

## COUNT IV
## COUNTERFEITING UNDER THE LANHAM ACT, 15 U.S.C. § 1114

49. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 of the complaint.

50. Defendant, without authorization from Life is Good, has manufactured, sold and shipped t-shirts, as described above, that display counterfeits or colorable imitations of federally registered Life is Good trademarks.

51. Defendant's actions are intended to cause, have caused and are likely to continue to cause confusion, mistake and deception among consumers and potential consumers as to whether Defendant's counterfeit products originate from or are affiliated with, sponsored by, licensed by

or endorsed by Life is Good.

52. Defendant has acted with knowledge of Life is Good's trademark rights and with a deliberate, willful intention to trade upon the consumer goodwill created and enjoyed by Life is Good.

53. Defendant's actions constitute trademark counterfeiting in violation of 15 U.S.C. § 1114.

54. The goodwill of Life is Good's trademarks is of enormous value, and Life is Good is suffering and will continue to suffer irreparable harm should Defendant's unauthorized manufacturing, selling and shipping of counterfeit products continue.

55. Defendant's use of Life is Good's trademarks on counterfeit products has continued and will continue unless enjoined by this Court.

56. Life is Good is entitled to preliminary and permanent injunctions against Defendant, as well as all other remedies available under the Lanham Act, including, without limitation, compensatory damages, enhanced damages, disgorgement of profits and costs and attorney's fees.

## COUNT V
### VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT

57. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 56 of the complaint.

58. Defendant's acts, as complained of herein, constitute unfair or deceptive trade acts or practices in violation of G.L. c. 93A, §§ 2 and 11.

59. The aforesaid unfair or deceptive acts or practices of Defendant occurred primarily and substantially in the Commonwealth of Massachusetts.

60. Defendant knowingly or willfully committed the aforesaid unfair or deceptive acts or practices.

61. The aforesaid unfair or deceptive acts or practices have caused Plaintiff a loss of money and/or property, including but not limited to lost profits, attorney's fees and other damages.

## COUNT VI
## UNFAIR COMPETITION UNDER THE COMMON LAW

62. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 61 of the complaint.

63. Plaintiff's trademarks are well-known throughout the United States.

64. Defendant's misappropriation of Life is Good's trademarks constitutes unfair competition in violation of the Lanham Act and the common law, as well as common law trademark infringement.

65. Unless enjoined, these acts will cause irreparable injury and damage to Plaintiff for which there exists no adequate remedy at law.

WHEREFORE, Plaintiff The Life is Good Company prays that this Court:

1. Enter judgment in favor of Plaintiff on all counts of the complaint;

2. Award Plaintiff monetary damages plus statutory interest;

3. Award Plaintiff enhanced damages, attorneys' fees and costs;

4. Order Defendant to disgorge all profits realized from the sale of infringing products;

5. Order Defendant to pay to Plaintiff statutory damages of $1,000,000 per counterfeit

mark per type of product sold, offered for sale, or distributed in accordance with 15 U.S.C. § 1117;

      6. Order Defendant to surrender all infringing products for destruction;

      7. Enter a preliminary injunction enjoining and restraining the Defendant, its directors, officers, agents, servants, employees, attorneys, subsidiaries, parents, affiliated companies, successors, and assigns, and all persons in active concert or participation with said Defendant who receive actual notice of this Court's orders by personal service or otherwise, from using in commerce any counterfeit or colorable imitation of Plaintiff's "LIFE IS GOOD" or "Jake Symbol" registered trademarks, or any mark confusingly similar to Plaintiff's "LIFE IS GOOD" or "Jake Symbol" trademarks;

      8. Enter a permanent injunction enjoining and restraining the Defendant, its directors, officers, agents, servants, employees, attorneys, subsidiaries, parents, affiliated companies, successors, and assigns, and all persons in active concert or participation with said Defendant who receive actual notice of this Court's orders by personal service or otherwise, from using in commerce any counterfeit or colorable imitation of Plaintiff's "LIFE IS GOOD" or "Jake Symbol" registered trademarks, or any mark confusingly similar to Plaintiff's "LIFE IS GOOD" or "Jake Symbol" trademarks; and

      9. Award such further relief as the Court deems just and appropriate.

<u>Jury Demand</u>

The Plaintiff demands a trial by jury on all issues so triable.

                                        THE LIFE IS GOOD COMPANY,
                                        By its attorneys,

                                        <u>/s/ Thomas E. Kenney</u>
                                        Thomas E. Kenney (#561590)
                                        Pierce & Mandell, P.C.
                                        11 Beacon Street, Suite 800
                                        Boston, MA 02108
                                        (617) 720-2444
                                        tom@piercemandell.com