UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE LIFE IS GOOD COMPANY, | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 16-cv-11565-GAO |
| | ) | |
| OOSHIRTS INC., | ) | |
|     Defendant | ) | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

INTRODUCTION

Plaintiff The Life is Good Company ("Life is Good") has filed a motion requesting that this Court issue a preliminary injunction (1) enjoining Defendant ooShirts Inc. ("ooShirts") from, *inter alia*, using in commerce any counterfeit or colorable imitation of Plaintiff's "LIFE IS GOOD" or "Jake Symbol" registered trademarks, or any mark confusingly similar to Plaintiff's "LIFE IS GOOD" or "Jake Symbol" trademarks; and (2) requiring that ooShirts provide Plaintiff with full contact information for the owner of each infringing campaign identified by Life is Good.  ooShirts does business as TeeChip, and operates an interactive website at www.teechip.com that hosts campaigns through which designers of t-shirts advertise and sell those shirts.  Numerous designers have started campaigns on Defendant's website that feature t-shirts that infringe Life is Good's trademarks.  Despite repeated notices from Life is Good, Defendant has not taken steps to prevent infringing campaigns from gaining access to its website – forcing Life is Good to bring this action and seek equitable relief.

1

STATEMENT OF FACTS

A. <u>The Plaintiff and its "LIFE IS GOOD" and "Jake Symbol" Trademarks.</u>

Since at least as early as 1994, and continuously therefrom, the Plaintiff and its predecessors (Albert Jacobs and John Jacobs, doing business as Jacobs Gallery) have sold various products such as t-shirts, hats, pants, other clothing, stickers, flying discs, coffee mugs, etc., under the trademark "LIFE IS GOOD." The goods have been sold to retail stores and consumers directly by Life is Good, through its licensees, or through its web site. *See* Complaint, ¶ 5. Since 1994, the Plaintiff has continuously and pervasively utilized its "LIFE IS GOOD" trademark within this district and throughout the United States on its products, on hang tags, displays, boxes, packaging and labels, at its website (www.lifeisgood.com), and in catalogs and other places. Complaint, ¶ 6.

On December 24, 1996, the United States Patent and Trademark Office (the "U.S.P.T.O.") issued a registration for Plaintiff's trademark "LIFE IS GOOD," registration number 2,025,737 (the "'737 Registration" ). The registration was issued to Jacobs Gallery. The goods under this registration are "Sportswear, namely T-shirts, sweatshirts, shirts, hats, pants, and shorts." The trademark was assigned by Jacobs Gallery to Life is good, Inc. on April 16, 1998. On April 6, 2002, the U.S.P.T.O. accepted Life is Good's section 8 and 15 affidavit for the '737 registration, and thus, it has become incontestable pursuant to 15 U.S.C. § 1065. The trademark was renewed on March 6, 2007, and is currently in full force and effect. On October 15, 2008, the change of the name of the registrant to The Life is Good Company was recorded with the U.S.P.T.O. Complaint, ¶ 8. In addition, Life is Good has eleven (11) other U.S. trademark registrations for the "LIFE IS GOOD" trademark for a variety of goods and services, and has registered the "LIFE IS GOOD" trademark in Canada, Europe and numerous other

countries. Complaint, ¶ 9.

Further, the Plaintiff, through assignment from Jacobs Gallery, is the owner of the "Jake Symbol," which Life is Good utilizes as a trademark on or in connection with many of the products it sells. An example of the "Jake Symbol" is attached to the complaint as Exhibit A. The "Jake Symbol" was registered with the U.S.P.T.O. on April 22, 1997, U.S. Reg. Number 2,055,452, and was assigned to Plaintiff on April 16, 1998. The U.S.P.T.O. accepted Life is Good's section 8 and 15 affidavit for the "Jake Symbol" registration, and thus, it has become incontestable pursuant to 15 U.S.C. § 1065. The "Jake Symbol" trademark registration was renewed on May 11, 2007, and is currently in full force and effect. Complaint, ¶ 11.

The trademark "LIFE IS GOOD" appears on or in connection with every product sold by Life is Good, and the "Jake Symbol" appears on many of Life is Good's products. Complaint, ¶ 12. For many years Life is Good has marketed its products and offered its products for sale at its internet web site located at www.lifeisgood.com. Complaint, para. 13. Representative pages from Life is Good's web site are attached to the complaint as Exhibit B.

B. <u>The Defendant and Its Infringing Activities</u>.

Defendant ooShirts is in the business of printing and selling t-shirts with a wide variety of designs. Upon information and belief, Defendant has online tools that permit its customers to create and upload infringing and counterfeiting designs, and start a "campaign" whereby the customers sell infringing t-shirts on Defendant's website. Upon each sale, Defendant manufactures the infringing and counterfeit t-shirt and ships it to the purchasing consumer. Complaint, ¶ 14. Upon each sale, Defendant reimburses itself for "production costs" as well as a seven percent (7%) processing fee, and pays out the remaining revenue to the t-shirt designer. Complaint, ¶ 15. On information and belief, Defendant has no method or process for screening a

design to ensure that it does not infringe the intellectual property rights of third-parties before the design is launched as a "campaign" and sales commence on Defendant's site. Complaint, ¶ 16.

Rather, the only "protection" that Defendant provides to third-party intellectual property owners is its "Intellectual Property Rights Policy." However, that policy requires intellectual property owners to inform Defendant of infringement *after* the site has begun hosting the campaign and fulfilling sales orders. Complaint, ¶ 17.[1] Although Defendant states that it is its "policy" to remove infringing content from its website, Defendant has confirmed to Life is Good's counsel that it will fulfill orders made for infringing products if those orders were made before Defendant received notice of the infringement. *See* Affidavit of John Banse ("Banse Aff."), Ex. __). Further, although Defendant states in its "Intellectual Property Rights Policy" that repeat offenders have their access to Defendant's site terminated, Life is Good understands that serial infringers are able to circumvent this policy by adopting fictitious user names that allow them to restart infringing campaigns on Defendant's website. Complaint, ¶ 19.

Although Defendant asserts that its "Intellectual Property Rights Policy" meets the requirements of the Digital Millennium Copyright Act ("DMCA"), it does not because Defendant's policy fails to effectively prevent repeat infringers from continuing to access Defendant's site to sell infringing products. Further, the DMCA "safe harbor" provisions only apply to copyright infringement claims; thus Defendant's policy affords it no "safe harbor" from Life is Good's trademark-based claims. Complaint, ¶ 20.

In early February of 2016, Life is Good learned that Defendant was hosting an infringing campaign entitled "J33p Life Is Good". As a result, on February 7, 2016, counsel for Life Is

---

[1] Defendant's "Intellectual Property Rights Policy" can be found at https://teechip.com/ip.

Good sent a letter to Defendant pursuant to its "Intellectual Property Rights Policy," requesting that the infringing campaign be removed from Defendant's website.  Complaint, ¶ 21.  A copy of that letter is attached to the complaint as Exhibit C.  Although Defendant temporarily removed that campaign from its website, the campaign reappeared in May of 2016 and again in June of 2016, requiring Life is Good's counsel to send another letter on June 13, 2016 demanding that Defendant remove the infringing campaign.  Complaint, ¶ 22.  A copy of that June 13, 2016 letter is attached to the complaint as Exhibit D.  In addition, Life is Good became aware of numerous other infringing campaigns hosted on Defendant's website, necessitating additional letters from Life is Good's counsel to Defendant on June 9, 2016, June 20, 2016, and June 22, 2016.  Copies of those letters are attached to the complaint as Exhibit E.

Although Defendant eventually removed a number of the infringing campaigns, a number remain.  Attached to the complaint as Exhibit F are printouts from Defendant's website for t-shirts offered for sale on Defendant's website as of the filing of this lawsuit.  A number of the t-shirts that have been offered for sale or currently are for sale on Defendant's website not only infringe Life is Good's trademarks, but are identical, counterfeit copies of Life is Good's graphics.  Complaint, ¶ 25.

Because of the rampant infringement promoted on Defendant's site, Life is Good has repeatedly requested that Defendant take affirmative steps to ensure that campaigns that infringe Life is Good's trademark rights are denied access to Defendant's website.  *See* Exhibits D and G to the complaint.  Defendant has refused to take such affirmative steps.  Complaint, ¶ 26.

Defendant's conduct is causing significant consumer confusion.  A number of consumers have reached out to Life is Good to inquire as to whether the infringing shirts sold on Defendant's website are authentic Life is Good shirts.  Complaint, ¶ 27.  Further, at least one

consumer purchased a shirt from Defendant's website believing that it was an authentic Life is Good shirt, only to have Defendant refuse to accept a return of the shirt when the consumer learned the truth.  Copies of emails reflecting consumer confusion are attached to the complaint as Exhibit H.  As a result, the Defendant's actions are causing, and unless enjoined will continue to cause, damage to the substantial goodwill that Life is Good has developed in its marks and brand.  Complaint, ¶ 28.

## ARGUMENT

I. LIFE IS GOOD IS ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANT'S UNAUTHORIZED USE OF ITS TRADEMARKS.

In order to obtain a preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a risk of irreparable harm if an injunction is not issued; (3) that the balance of harms favors the moving party; and (4) that the public interest favors issuance of an injunction.  *See, e.g., Commerce Bank & Trust Co. v. TD Banknorth, Inc.*, 554 F. Supp. 2d 77, 83 (D. Mass. 2008).  In a trademark infringement action the likelihood of success factor is the crucial factor, because irreparable harm is presumed to result from trademark infringement.  *See, e.g., Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006).  As shown below, Life is Good easily satisfies all four factors for issuance of a preliminary injunction.

A. Life is Good Is Likely to Succeed on the Merits of Its Claims.

In order for Plaintiff to prevail on its trademark claims, it must demonstrate (1) Plaintiff is the owner of valid trademarks; and (2) Defendant's use of similar names or marks is likely to cause consumer confusion.  *Star Fin. Servs, Inc. v. AASTAR Mort. Corp.*, 89 F.3d 5, 9 (1st Cir. 1996).   The record amply supports the conclusion that Life is Good owns exclusive rights in its

"LIFE IS GOOD" and "Jake Symbol" trademarks, and that the various shirts sold on Defendant's website have caused and are likely to cause consumer confusion.

1. Life is Good is the Owner of the "LIFE IS GOOD" and "Jake Symbol" Trademarks.

There can be no doubt that Life is Good is the owner of the exclusive rights in and to its "LIFE IS GOOD" and "Jake Symbol" trademarks. Both marks have been duly registered with the U.S.P.T.O., and those registrations are valid and in full force. Such registration is "prima facie evidence of the validity of the registered Mark[s]." 15 U.S.C. § 1115(a). Further, each U.S. Trademark Registration "is prima facie evidence that such mark has become distinctive of the goods in commerce." *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 161 (1st Cir. 1977).

In addition, both of Life is Good's trademarks at issue are now incontestable under 15 U.S.C. § 1115. Thus, "the registration shall be conclusive evidence of the validity of the registered mark and the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). "Indeed, a plaintiff who holds an incontestable registered mark is generally entitled to a preliminary injunction enjoining an allegedly infringing party." *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 62 (1st Cir. 2013).

In short, Life is Good is the owner of valid trademarks for "LIFE IS GOOD" and the "Jake Symbol," and is entitled to enforce its rights in those marks against Defendant's infringement.

2. Defendant's Unauthorized Use of "LIFE IS GOOD" and the "Jake Symbol" Is Likely to Cause Consumer Confusion.

As the Court is aware, courts in the First Circuit typically analyze eight (8) factors in

assessing likelihood of confusion. A review of those factors confirms that Defendant's unauthorized use of "LIFE IS GOOD" and the "Jake Symbol" is likely to cause consumer confusion.

   a.  <u>Similarity of the Marks</u>.

As shown in Exhibits C, D, E and F to the complaint, Defendant has sold numerous t-shirts containing the designation "LIFE IS GOOD" as well as numerous t-shirts containing counterfeit copies of the "Jake Symbol." Thus, the marks are not similar, they are identical. This factor strongly favors a finding of a likelihood of confusion. Further, where, as here, the parties' goods directly compete, similarity of the marks "can be highly influential." *Oriental Financial Group, Inc. v. Cooperativa de Ahorro Y Credito Oriental*, 2016 U.S. App. LEXIS 14162, *18 (1st Cir. 2016).

   b.  <u>Similarity of the Goods</u>.

Both parties sell t-shirts through their respective websites. Life is Good's trademarks cover t-shirts. The parties' respective goods are identical and, once again, this factor strongly supports a finding of a likelihood of confusion.

   c.  <u>Channels of Trade, Advertising, and Classes of Prospective Purchasers</u>.

These three factors are typically analyzed together. *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 19 (1st Cir. 2004). Both parties advertise and sell t-shirts on their respective websites to consumers of those products. As such, these factors militate in favor of the Plaintiff.

   d.  <u>Actual Confusion</u>

A number of consumers have reached out to Life is Good to inquire as to whether the infringing shirts sold on Defendant's website are authentic Life is Good shirts. Complaint, ¶ 27

and Exhibit H. Further, at least one consumer purchased a shirt from Defendant's website believing that it was an authentic Life is Good shirt, only to have Defendant refuse to accept a return of the shirt when the consumer learned the truth. Complaint, Exhibit H. As the First Circuit has stated, "even a few incidents" of actual confusion are "highly probative of the likelihood of confusion." *Dorpan*, 728 F.3d at 67, *quoting Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 720 (3rd Cir. 2004). Here, Life is Good has come forward with evidence of actual confusion despite the fact that it has only known of Defendant's infringement for a little over six (6) months. The incidents in the record establish that consumers have been confused by Defendant's conduct, and there is a likelihood of future confusion if Defendant is not enjoined.

e. Defendant's Intent.

A presumption of bad faith can arise when the infringing party adopts a mark with knowledge of the Plaintiff's mark for competing goods, and sells goods bearing the infringing mark to unsophisticated customers. *See, e.g., R.J. Toomey Co. v. Toomey*, 683 F. Supp. 873, 877-78 (D. Mass. 1998). At least as early as February of 2016, when Defendant received the first notice from the Plaintiff, Defendant has known that it is offering for sale and selling shirts that infringe Life is Good's Trademarks. Yet Defendant has continued to offer those infringing shirts for sale for more than six (6) months, selling them to unsophisticated and unsuspecting consumers. Defendant's continued sales after February constitute willful infringement and power evidence of Plaintiff's need for injunctive relief.

f. Strength of the Marks.

Plaintiff owns two incontestable U.S. Trademark Registrations for the Trademarks at issue. Further, Plaintiff has continuously and pervasively used those marks in interstate commerce since 1994. There can be no doubt that Plaintiff owns strong trademarks that are

entitled to broad protection against infringement.  This factor supports a finding of a likelihood of confusion.

In short, even a cursory review of the relevant factors leads to the inescapable conclusion that Life is Good is more than likely to succeed on the merits of its trademark claims.

B. <u>Life Is Good Is Suffering Irreparable Harm</u>.

Where, as here, Plaintiff has established a likelihood of success on its trademark claims, irreparable harm is presumed.  *See Commerce Bank & Trust Co.*, 554 F. Supp. 2d at 83.  Beyond the presumption of harm, Life is Good has made a showing that it is suffering actual irreparable harm resulting from Defendant's conduct.  Defendant has repeatedly hosted campaigns featuring t-shirts that infringe Plaintiff's Trademarks, and has profited from sales of those infringing products.  Despite numerous notices from Life is Good, Defendant has taken no steps to affirmatively deny infringing campaigns access to its website.  As a result, Life is Good must constantly monitor Defendant's website and repeatedly notify Defendant each time Life is Good finds an infringing campaign.  This harm to Life is Good's goodwill and business reputation will continue until this Court enjoins Defendant from hosting infringing campaigns.

C. <u>The Balance of the Harms Weighs in Favor of The Plaintiff</u>.

Life is Good has made a powerful showing of irreparable harm – both presumed and actual.  In contrast, "harm to the defendant flowing from an injunction where infringement appears likely is entitled to less consideration than other harms." *Id.*  Here, the only harm that Defendant would suffer as a result of the issuance of an injunction would be its inability to profit from infringing sales – clearly a harm of no import.  Thus, the balance of the harms strongly favors the Plaintiff and the issuance of an injunction.

D. <u>An Injunction Will Serve the Public Interest</u>.

Here, Life is Good has demonstrated a tremendous likelihood of success on the merits, and that showing alone "is sufficient to place the weight of public interest concerns in favor of granting the injunction." *Boustany v. Boston Dental Group, Inc.*, 42 F. Supp. 2d 100, 113 (D. Mass. 1999). Because the public interest will be served by issuance of an injunction, the Court should grant Plaintiff's request and enjoin Defendant's infringing conduct.

CONCLUSION

For the reasons set forth above, Plaintiff The Life is Good Company respectfully requests that this Court enter a preliminary injunction (1) enjoining and restraining the Defendant, its directors, officers, agents, servants, employees, attorneys, subsidiaries, parents, affiliated companies, successors, and assigns, and all persons in active concert or participation with said Defendant who receive actual notice of this Court's orders by personal service or otherwise, from using in commerce any counterfeit or colorable imitation of Plaintiff's "LIFE IS GOOD" or "Jake Symbol" registered trademarks, or any mark confusingly similar to Plaintiff's "LIFE IS GOOD" or "Jake Symbol" trademarks; and (2) requiring that ooShirts provide Plaintiff with full contact information for the owner of each infringing campaign identified by Life is Good.

THE LIFE IS GOOD COMPANY,
By its attorneys,

   /s/ Thomas E. Kenney
Thomas E. Kenney (#561590)
Pierce & Mandell, P.C.
11 Beacon Street, Suite 800
Boston, MA 02108
(617) 720-2444
tom@piercemandell.com